IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Thankgod Ekufu, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case 12 CV 6669 |
| ) | |
| ) | Hon. Elaine Bucklo |
| Iberia Airlines and Milton Uribe, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

Plaintiffs Thankgod Ekufu, Loveth Ekufu, and Gladys Agbasi proceeding *pro se,* filed a complaint against Iberia Airlines and Milton Uribe, Iberian Airlines' station manager at O'Hare International Airport ("O'Hare"), for damages incurred when a bag Plaintiff Agbasi checked for an Iberia Airline's flight originating in Lagos, Nigeria arrived one week late to her final destination, O'Hare, and was missing some of its contents. Defendants moved for summary judgment on Plaintiffs' claims, or alternatively, to limit Plaintiffs' liability as prescribed by Article 22 (2) of the Convention for the Unification of Certain Rules for International Carriage by Air (commonly known as "the Montreal Convention"), which governs this case. For the reasons that follow, I deny the motion in part and grant it in part.

1

I.

**Local Rule 56.1**

Defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). [#31] In conjunction with their motion for summary judgment, Defendants included a "Notice to Pro Se Litigant Opposing Summary Judgment." [#34] That notice explained the requirements of the Northern District of Illinois' Local Rules and warned Plaintiffs that a party's failure to controvert facts as set forth in the moving party's statement results in those facts being admitted.

Local Rule 56.1(b) requires a party opposing summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
> (A) a response to each numbered paragraph in the moving party's statement, including, the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

Although *pro se* plaintiffs are entitled to lenient standards, compliance with the procedural rules is required. *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004) ("[A] district court is entitled to decide the motion based on the factual record outlined in the [Local 56.1] statements." (internal citations omitted)). The Court will

accept Plaintiffs' factual statements only to the extent that they could properly testify about the matters asserted. That is, this Court will not accept as fact any matters for which Plaintiffs have no personal knowledge. Fed. R. Evid. 602.

With this in mind, the Court views Defendants' Rule 56.1 statements supported by the record and not properly rebutted by Plaintiffs to be true and uncontested. The Court notes that some of Plaintiffs' proposed factual statements constitute argument or conclusory assertions. Where, however, Plaintiff has properly objected to Defendants' factual assertions with his own counter-factual assertions with record evidence to support them, the Court will consider those facts.

**Facts**

Plaintiff Agbasi was a passenger on Iberia Airlines ("Iberia") flight #3747 from Lagos, Nigeria to Madrid, Spain on January 17, 2012. In Madrid, Ms. Agbasi connected to Iberia flight #6275 and traveled to her final destination, O'Hare, on January 18, 2012. Plaintiff Agbasi checked two pieces of luggage at the outset of her journey in Nigeria. When she arrived at O'Hare, she found only one of her checked bags. Ultimately, her delayed bag was returned to her on January 26, 2012. Upon receiving her bag, Ms. Agbasi discovered that some of the items she had packed and checked were missing. The parties dispute the full list of missing items, though both agree that certain nutritional supplements and dried herbs and spices were among the

missing contents. Plaintiff Agbasi contends that pieces of traditional Nigerian clothing and jewelry were also missing when her bag was returned. Defendants claim that the herbal supplements were removed by security forces in Lagos, Nigeria because they are banned by Spanish regulation. Plaintiffs maintain that the contents were stolen while in the custody of Iberia.

II.

"Summary judgment is proper where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Collins v. Am. Red Cross,* 715 F.3d 994, 997 (7th Cir. 2003) (quoting Fed. R. Civ. P. 56(a)). When deciding a motion for summary judgment, I must view all evidence in the light most favorable to the moving party. *Id.* However, I am not required to draw inferences "that are supported only by speculation or conjecture." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012). "A genuine issue of material fact exists only where there is enough evidence that a reasonable jury could return a verdict in favor of the nonmoving party." *Collins*, 715 F.3d at 997.

**The Montreal Convention**

The parties agree that the Montreal Convention, a treaty concerning international air travel which was adopted in 1999 and enacted as law in the United States in November 2003, governs this case. Convention for the Unification of Certain Rules for

4

International Carriage by Air, May 28, 1999, ICAO Doc. 9740, *reprinted in* S. TREATY DOC. NO. 106-45, 1999 WL 33292734 (2000) (hereinafter "Montreal Convention"). The purpose of the Montreal Convention is to "unif[y] and replace the system of liability from the Warsaw Convention," which previously governed the rights and liabilities associated with international airline travel. *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd.*, 522 F.3d 776, 780-81 (7th Cir. 2008). The Montreal Convention "applies to all international carriage of persons, baggage or cargo performed by aircraft." Montreal Convention, Art. 1(1). It also provides passengers with the right to damages arising from "any carriage in which, according to the agreement between the parties, the place of departure and the place of destination … are situated … within the territory of two State parties." *Id.* at 1(2). The countries involved in this case—Nigeria, Spain, and the United States—are all signatory countries to the Montreal Convention.

**Standing**

Defendants first challenge the standing of Plaintiffs Thankgod Ekufu and Loveth Ekufu, neither of whom were passengers on the Iberia Airlines flights. Defendants argue that the Ekufu Plaintiffs have no standing since the Montreal Convention governs only the rights of *passengers* and the airlines arising from international carriage. *See* Art. 1(1) ("This Convention applies to all international carriage of persons, baggage, or cargo

5

performed by aircraft for reward."). Plaintiffs argue that because the passenger, Ms. Agbasi, is Thankgod Ekufu's mother-in-law and Loveth Ekufu's mother, and the allegedly stolen items were purchased with their money, they have standing to raise these claims.

"Under Article III of the Constitution, a party must demonstrate standing in order to satisfy the 'case or controversy' requirement necessary to the exercise of our judicial power." *Sanner v. Bd. of Trade of City of Chicago*, 62 F.3d 918, 922 (7th Cir. 1995). To satisfy the standing requirement, a putative party must make a three-part showing: (1) that it has an "'injury in fact'—an invasion of a legally protected interest which is … concrete and particularized," (2) "that its injury is fairly traceable to the defendant's conduct", and (3) that the injury is "likely to be redressed by the requested relief." *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 771 (7th Cir. 2013) (internal citation omitted). "These are the constitutional minimums for standing to sue in federal court; there are also 'prudential' standing interests, one of which is that 'the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 1975)).

Here, Plaintiff Agbasi was a party to the agreement between

herself and Iberia Airlines that she entered into when she purchased her ticket, and she *personally* suffered when *her* bag was searched and its contents were removed. Therefore, she has standing to sue. The Ekufu Plaintiffs, however, were not passengers, nor parties to the agreement, nor directly harmed by Iberia. They cannot demonstrate that they have a legally protected interest in Plaintiff Agbasi's luggage arriving with all of its contents intact, which violates one of the Constitutional requirements for standing. *See Edgewood Manor*, 733 F.3d at 771 (a party must allege "an invasion of a legally protected interest"). But even if they could surmount the Constitutional prerequisites, they cannot clear the prudential boundaries for standing, because the Ekufu Plaintiffs are not asserting their own legal rights and interests, but rather those of Plaintiff Agbasi.[1] Therefore, the Ekufu Plaintiffs lack standing to sue.

**Claim for Delayed Baggage and Missing Contents**

The parties do not dispute that certain items were removed from Plaintiff Agbasi's baggage. Defendants argue that Plaintiff Agbasi's claim for the contents missing from her baggage fails because they were confiscated due to European Union restrictions on them. They argue that Spain prohibits the importation of

---

[1] The Ekufu Plaintiffs do not argue that they have third-party standing to sue in this case, and given that Plaintiff Agbasi is a party to the suit, this Court presumes she is capable of protecting her own interests. *Shimer v. Washington*, 100 F.3d 506, 508 (7th Cir. 1996) ("We first consider whether there is some hindrance to the third party's ability to protect his own interest.").

certain herbal remedies and medicines, including those that were removed from her bag. They urge that "[b]y virtue of plaintiff's purchase of a ticket on a[n] Iberia flight, she consented to become a party to the contract of air transport." Def. Mem. Supp. Sum. J. [#30] at 3. The "Conditions of Contract" included a provision requiring passengers to "comply with all governmental regulations," and they are claiming that her banned items violated governmental regulations. *Id.* In support of their argument, Defendants submit a Declaration from Iberia's Executive Office Manager who testifies that "[t]he items removed included herbal medicines and nutritional supplements which are now barred from importation into Spain," and "[a]ccordingly, security personnel" in Lagos "frequently inspect passengers' baggage and remove those banned items from passengers' checked baggage." Def. L.R. 56.1 Stmt [#31-1] Dec. of F. Pollan, at ¶ 6. They also submit a translated copy of Spain's Royal Decree number 2208/1994 ("Royal Decree"), which bans the importation of certain items, as proof that the security forces in Lagos, Nigeria confiscated Plaintiff Agbasi's items pursuant to government regulation. Def. Rule 56.1 Stmt [#31] at ¶¶ 14-16; Exs. D and E [#31-1].[2]

Plaintiff Agbasi responds that the herbal supplements she was carrying were "legal and legitimate food, food ingredients, dried vegetables, spices or other food condiments used and sold

---

[2] Defendants also submit an April 20, 2011 newspaper article that says European Union regulations will require herbal medicines to be registered and to meet certain standards before they may be sold. Ex. C to Def. L.R. 56.1 Stmt. [#31-1]. That article, however, is hearsay and will not be considered.

in every part of the world, including Spain and the United States." Plt. Resp. Br. [#35] at 1. She argues that while some of the ingredients may be banned from importation while they are fresh, no countries ban them when they are dried, as all of hers were. *Id.* at 1-2. She notes that the same items that were confiscated from her bag were also packed in her other bag, which made it to her final destination undisturbed. According to the record, however, that bag was not searched. She also argues that Defendants' list of items taken from her bag is incomplete because it does not include the missing pieces of Ashoke clothes and three pieces of traditional jewelry.

While the contract that Plaintiff Agbasi agreed to upon purchasing her ticket required her to "comply with Government travel requirements," it is not clear either that the security agents in Lagos removed the items because they believed that they were banned by Spanish law, or that the allegedly contraband items were actually banned from importation into Spain. The Declaration from Iberia's Executive Office Manager provides evidence of Iberia's general policy to confiscate banned items, but it does not offer personal knowledge that, in this instance, the items were removed because of security personnel's belief that they were banned. As for the Royal Decree, it too fails to offer proof that the items in Plaintiff Agbasi's bag were actually banned because it merely prohibits generally "homeopathic medicines" that lack "corresponding authorization

9

from the Ministry of Health and Consumer Affairs." Def. L.R. 56.1 Stmt [#31-1] Ex. 3. Nowhere does the Royal Decree offer specific descriptions of the items banned such that it is possible to confirm from the record that those removed from Ms. Agbasi's baggage were on the list of banned items.

Because Defendants have failed to come forth with sufficient proof that Plaintiff Agbasi's items were removed because they were banned by the Spanish government, they have also failed to prove that Plaintiff Agbasi violated the Conditions of Contract, and thus summary judgment is not appropriate.

**Limits of Liability**

Defendants also argue that Article 22 of the Montreal Convention governs the limits of Plaintiff's Agbasi's damages. Article 22 provides that

> [i]n the carriage of baggage, the liability of the carrier in the case of destruction, loss, damage or delay is limited to 1 000 Special Drawing Rights[3] for each passenger unless the passenger has made, at the time when the checked baggage was handed over to the carrier, a special declaration of interest in delivery at destination and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless it proves that the sum is greater than the passenger's actual interest in delivery at destination.

Montreal Convention, Art. 22(2). Defendants urge that Iberia's

---

3 "An SDR is an artificial currency, the exchange rate for which is published daily by the International Monetary Fund. The value of an SDR fluctuates based on the global currency market, and, under the Montreal [Convention], Art. 23, is determined 'at the date of judgment.'" *Shah v. Kuwait Airways Corp.*, No. 08 Civ. 7371, 2012 WL 1631624, at *1 n.6 (S.D.N.Y. 2012) (internal citations omitted).

liability is limited to the amount of the Special Drawing Rights ("SDR").[4] They argue that because Plaintiff made no "special declaration of interest" nor did she pay "a supplementary sum" to Iberia, she is not entitled to more than 1,130 SDRs. Plaintiff argues that because the items in her bag were "intentionally stolen," this Court has the power to grant "any suitable judgment" and points to Article 22(5) of the Montreal Convention, which provides that the limitations on liability

> shall *not* apply if it is proved that damage resulted from any act or omission of the carrier, its servants or agents, done with the intent to cause damage or recklessly and with knowledge that damage would probably result; provided that, in the case of such an act or omission of a servant or agent, it is also proved that such servant or agent was acting *within the scope of its employment*.

Montreal Convention, Art. 22(5) (emphasis added). She urges that because she alleges that her items were "intentionally stolen" by employees of Iberia, the limitations in Article 22(2) do not apply. *See* Plt. Mem. Opp. Sum. J. [#35] at 2 ("This honorable court should … hold[] [Defendants] liable for our stolen items.")

Here, Plaintiff Agbasi must not only prove that the Iberia employees removed the items with the requisite intent, but also that the alleged theft occurred *within the scope of employment*. Montreal Convention, Art. 22(5); *see also Shah v. Kuwait Airways*

---

[4] The SDR amount was raised from the original 1,000 to 1,130 on December 30, 2009. *See* Inflation Adjustments To Liability Limits Governed by the Montreal Convention Effective December 30, 2009, 74 Fed. Register 59017 (Nov. 16, 2009).

*Corp.*, No. 09-4734, 2010 WL 2679960, at * 1 (2d Cir. Jul. 7, 2010) (holding that district courts evaluating a claim that theft by airline employees precluded the operation of liability limits under Article 22(2) must determine whether theft is considered an act within the scope of employment). Plaintiff has offered no case law in support of her argument that Article 22(5) allows her to escape the limitations of Article 22(2). This Court, having researched the issue on its own, notes that the Seventh Circuit has not issued an opinion outlining what plaintiffs must prove in order to be relieved of the limitations of Article 22(2). Upon review of our sister Circuits' decisions, I find the method employed in *Shah,* 2010 WL 2679960, at * 1, instructive. There, after the district court held that the liability limitations applied, the Second Circuit remanded the case so the district court could decide whether the laws of New York, the forum state, or Kuwait, the law where the alleged theft occurred, applied in determining the issue of whether an employee's alleged theft qualifies as intentional misconduct that could be imputed to the air carrier under the Montreal Convention. *Id.* at *1-2. The parties in *Shah* briefed the forum law issues, and the district court ultimately held that the law of forum state applied. *See Shah v. Kuwait Airways Corp.*, No. 08 Civ. 7371, 2012 WL 3055652 at *1 (S.D.N.Y. Jul. 26, 2012) (acknowledging that New York law applied).

Here, neither party has asserted which substantive law

should apply to this question; therefore, this Court is entitled to apply the laws of Illinois. *Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." (internal citation omitted)).

Under Illinois law, courts look to the Restatement (Second) of Agency ("Restatement") to determine whether an employee's action took place outside the scope of his employment. *See Rodman v. CSX Intermodal, Inc.*, 405 Ill.App.3d 332, 335, 938 N.E.2d 1136, 1139 (Ill.App.Ct. 2010) ("[O]ur supreme court has reaffirmed that Illinois courts look to the Second Restatement of Agency (the Restatement) for guidance in determining whether an employee's acts are within the scope of employment."). Under the Restatement, "[c]onduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; © it is actuated, at least in part, by a purpose to serve the master." *Id.* (quoting Restatement (Second) of Agency § 228 (1958)). The Restatement also provides that "[c]onduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.* (internal citations omitted). Additionally, "[o]nly if no reasonable person could conclude from the evidence that an employee was acting within the course of

13

employment should a court hold as a matter of law that the employee was not so acting." *Id*. at 336.

Plaintiff has failed to come forth with sufficient proof that the Iberia employees who allegedly stole the items from her baggage were acting within the scope of their employment. No reasonable juror could conclude that security forces at the Nigerian airport are employed to steal items from passengers as part of their service to Iberia. Nor could a reasonable juror find that theft of passengers' personal items serves the goals of Iberia, who presumably strives to offer customer service that makes passengers want to become repeat customers. Having failed to produce evidence that theft of her personal items falls within the scope of Iberia's agents' employment, the limitations on liability provided in Article 22(2) will apply.

### III.

For the foregoing reasons, Defendants' motion for summary judgment is denied in part and granted in part.

**Dated**: January 9, 2014

                          **ENTER ORDER:**

                          **Elaine E. Bucklo**
                          United States District Judge